175 U.S. 552 (1899)
CHAVEZ
v.
UNITED STATES.
No. 14.
Supreme Court of United States.
Argued October 17, 18, 1899.
Decided December 22, 1899.
APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.
Mr. Frank W. Clancy for appellant.
Mr. Matthew G. Reynolds for appellee. Mr. Solicitor General was on his brief.
MR. JUSTICE PECKHAM delivered the opinion of the court.
This is an appeal from a judgment of the Court of Private Land Claims refusing to confirm the title of the appellant to *553 some 5000 acres of land in New Mexico, about one league from the Manzano grant. The title is evidenced by a grant by the territorial deputation of New Mexico, made in 1831, and the first question in the case relates to the authority of that body to make the grant.
It is also contended that if the territorial deputation did not have the power to make the grant, and that power rested with the governor of the department, his presence in the territorial deputation as its ex officio president when the grant was made, and, so far as the record shows, his not protesting but acquiescing in its action, was equivalent to and the same as a grant made by himself in his official character as governor.
It is further stated that by reason of the action of the governor in writing the letter dated December 22, 1831, and hereinafter set forth, that officer ratified and confirmed the grant, and in effect made it his own.
It appears from the record that on February 28, 1831, citizen Nerio Antonio Montoya petitioned the honorable corporation of Tome, and asked it that it would append to his petition its own report to the most excellent deputation, so that that body should grant him the land described in the petition. The corporation of Tome, on the 19th of March, 1831, granted the prayer of the petitioner, and adopted a resolution which provided that his petition should " go before the most excellent territorial deputation, which, as the authority competent, may accede to the donation of the land prayed for by the said petitioner without injuring the pastures and watering places for the passers-by." The resolution was accordingly forwarded to the territorial deputation, and that body on November 12, 1831, took action as follows:

"(Extract from record of proceedings of the territorial deputation, session of November 12, 1831.)
"The foregoing record having been read and approved, a petition of citizen Nerio Montoya, a resident of Valencia, in which he asks for the donation, for agricultural purposes, of a tract of vacant land in the Manzano within the limits of the Ojo de en Medio as far as the rancheria, was taken up and the *554 report of the respectable corporation council of Tome, in which it is set forth that there is no objection to the concession of the said land, having been heard it was ordered that it be granted.

* * * * *
"The session was adjourned.
 "SANTIAGO ABREU, President. (Rubric.)
 "JUAN RAFAEL ORTIZ. (Rubric.)
 "ANTO. JOSE MARTINEZ. (Rubric.)
 "JOSE MANL. SALAZAR. (Rubric.)
 "TEODOSIO QUINTANA. (Rubric.)
 "RAMON ABREU, Secretary. (Rubric.)"
In accordance with this action, the following direction by the deputation, signed by its secretary, was given the alcalde of the proper jurisdiction:
 "SANTA FE, November 12, 1831.
"The honorable the deputation of this territory, having received the report of the constitutional council of Tome, appended to this petition, has resolved in this day's session to grant the land prayed for by the petitioner, charging the alcalde of said jurisdiction to execute the document that will secure the grantee in the grant hereby made to him.
 "ABREU, Secretary."
The alcalde thereupon executed a document which, after reciting that, "In obedience to the decree of the most excellent deputation of this territory made under date of November 12 of the current year on the margin of the petition which, under date of February 28, the citizen Nerio Antonio Montoya, resident of this said jurisdiction, presented to this honorable council, and on which petition is recorded the report made by this council, in accordance with which report its excellency has deemed it proper to accede to the petition of Montoya, granting him full and formal possession of the tract he prayed for," etc., declared that "Montoya, whenever he may choose or think best to do so, may notify me to proceed with him to the locality to place him in possession of the property *555 granted him, with all the customary formality," etc. This was dated December 7, 1831, and signed by the alcalde.
On December 12, in the same year, the same alcalde, "in compliance with the provision made by this most excellent deputation of this territory and the notification given me by the citizen Nerio Antonio Montoya," proceeded with Montoya to the tract of land granted him and placed him in possession thereof, the act being signed by the alcalde.
There was also put in evidence on the trial of the action in the court below, on the question of ratification, the following:

"Office of the Political Chief of New Mexico.
"By your official communication of the 20th instant, I am advised of your having executed the decree of the most excellent deputation granting to the citizen Nerio Antonio Montoya a tract of land.
"But in regard to the inquiry you make of me, as to how much your fee should be, I inform you that I am ignorant in the premises, and that you may, if you choose to do so, put the question to the assessor (asesor), who is the officer to whom it belongs, to advise the justices of first instance in such cases.
"God and Liberty. Santa Fe, December 22, 1831.
 "JOSE ANTONIO CHAVEZ.
"To Alderman Miguel Olona."
Various mesne conveyances were put in evidence on the trial, showing the transfer to the appellant of whatever title Montoya had to the land described, and it was then admitted that the appellant herein has succeeded to all the rights of the original grantee, if any, in this case. Evidence of possession under this grant was also given.
The court below held that the departmental assembly or territorial deputation had no power or authority to make a grant of lands at the time the grant in this case was attempted to be made, and that the fact that the governor may have presided at the meeting at the time the action was taken made no difference, as the power to make the *556 grant was exclusively in the governor, and the territorial deputation had no jurisdiction in the matter. The claim was, therefore, rejected.
We think that in thus deciding, the court below was right.
We refer to some of the cases which show the territorial deputation did not have the power to make a grant, but only the power to subsequently approve it.
In United States v. Vallejo, 1 Black, 541, it was held that the Mexican law of 1824 and the regulations of 1828 altered and repealed the Spanish system of disposing of public lands, and that the law and the regulations from the time of their passage were the only laws of Mexico on the subject of granting public lands in the territories. It was also held that the governor did not possess any power to make grants of public lands independently of that conferred by the act of 1824 and the regulations of 1828. Mr. Justice Nelson, who delivered the opinion of the court in that case, refers to the various sections of the law of 1824, and also to the regulations of November, 1828, for the purpose of showing that the governors of the territories were authorized to grant vacant lands within their respective territories with the object of cultivation or settlement, and that the grants made by them to individuals or families were not to be definitively valid without the previous consent of the departmental assembly, and when the grant petitioned for had been definitively made, a patent, signed by the governor, was to be issued, which was to serve as a title to the party. This case did not decide that the territorial deputation could not make a valid grant, because the grant was made by the governor, but the various extracts from the law and regulations indicate very plainly that the authority to initiate a grant of public lands existed in the governor alone and not in the assembly.
In United States v. Vigil, 13 Wall. 449, it was held that departmental assemblies (territorial deputations) had no power to make a grant.
In his argument, at the bar, counsel for this appellant contended that the territorial deputation had lawful power and *557 authority to make the grant to Montoya, and in order to maintain that proposition stated that it was necessary to discuss the effect of the decision of this court in United States v. Vigil. He claimed that what was said as to the lack of power in the territorial deputation to make a grant was not necessary to the decision of the court in that case, and that such expressions as were therein used regarding the question would not, therefore, constitute a precedent now binding on this court.
In Vigil's case there was a petition to the departmental assembly, through the governor of New Mexico, asking for a grant of land which in fact amounted to over two million acres, the grantees binding themselves, if the grant were made, to construct two wells for the relief and aid of travellers, and to establish two factories for the use of the State, and to protect them from hostile invasion. The governor transmitted the petition to the assembly, but declined to recommend that favorable action should be taken upon it. The assembly, notwithstanding this refusal, granted the tract on January 10, 1846, for the purpose of constructing wells and cultivating the land, etc., and the question was as to the validity of this grant.
The opinion was delivered by Mr. Justice Davis, who stated that it had been repeatedly decided by this court that the only laws in force in the territories of Mexico, for the disposition of public lands, with the exception of those relating to missions and towns, were the act of the Mexican congress of 1824 and the regulations of 1828. In the course of his opinion he said:
"These regulations conferred on the governors of the territories, `the political chiefs,' as they are called, the authority to grant vacant lands, and did not delegate it to the departmental assembly. It is true the grant was not complete until the approval of the assembly, and in this sense the assembly and governor acted concurrently, but the initiative must be taken by the governor. He was required to act in the first instance  to decide whether the petitioner was a fit person to receive the grant, and whether the land itself could be granted without prejudice to the public or individuals. In case the *558 information was satisfactory on these points, he was authorized to make the grant, and at the proper time to lay it before the assembly, who were required to give or withhold their consent. They were in this respect an advisory body to the governor, and sustained the same relation to him that the Senate of the United States does to the President in the matter of appointments and treaties."
A subsequent portion of the opinion dealt with the case upon the assumption that the grant had been made by the governor, and even in that case it was said the grant would have been invalid, because it violated the fundamental rule on which the right of donation was placed by the law; that the essential element of colonization was wanting, and that the number of acres granted was enormously in excess of the maximum quantity grantable under the law. This in nowise affected the prior ground upon which the opinion was based, that the departmental assembly had no power to make the grant. That was the essential and material question directly involved in the case, while the second ground mentioned was based upon an assumption that, even if the governor had made the grant, it would still have been void for the reason stated. The court did not base its decision that the departmental assembly had no power to make the grant because of its enormous extent. It held that the assembly had no power to make any grant, no matter what its size. It is, as we think, a decision covering this case.
In Hayes v. United States, 170 U.S. 637, the grant was by the territorial deputation of New Mexico, and it was stated by Mr. Justice White, speaking for the court, that "it cannot be in reason held that a title to land derived from a territory which the territorial authorities did not own, over which they had no power of disposition, was regularly derived from either Spain or Mexico or a State of the Mexican nation."
No presumption that the territorial deputations had authority to make grants can arise from the fact that in some instances those bodies assumed to make them. The case in this respect bears no resemblance to United States v. Percheman, 7 Pet. 51, 96, or to United States v. Clarke, 8 Pet. 436, 447, 453. In those cases it was not denied that the governor had authority in *559 some circumstances to make grants, and it was therefore held that a grant made by him was prima facie evidence that he had not exceeded his power in making it, and that he who denied it took upon himself the burden of showing that the officer by making the grant had transcended the power reposed in him. There is in the case before us no evidence that the territorial deputation had the power in any event to make grants other than the fact that in some instances it assumed to make them.
The cases heretofore decided in this court, and some of which have been above referred to, show that such fact is inadequate to prove the existence of the authority.
It is, however, urged that the record of the action of the territorial deputation in regard to this grant shows that the governor and ex officio president of the deputation was present when the deputation decided to make the grant as petitioned for, and that his being so present and attesting the action of the deputation was equivalent to the making of the grant himself as governor. We do not think so. He did not assume to make any grant whatever, and certainly none in his character of governor. It does not even appear beyond doubt that he was present when the deputation made the grant. His signature is perfectly consistent with a mere authentication of the previous action of that body.
The petition of Montoya was addressed primarily to the corporation of Tome, and he requested that corporation to send his petition, approved by it, to the deputation to make him a grant of the land described in his petition. Acting under that request, the corporation of Tome sent his petition to the "most excellent territorial deputation," and asked that body to accede to the donation of the land prayed for. In conformity to the petition, the territorial deputation itself made the grant. The fact that the governor, being ex officio a member of the deputation, signed as president of that body the record of the act of the deputation, is not the equivalent of a grant by him in his official character of governor, nor does such act bear any resemblance to a grant by him. No one on reading the record would get the idea that the governor *560 was himself making the grant or that he thereby intended so to do. It does not even show that he was in favor of the grant as made by the deputation. His signing the record constituted nothing more than an authentication of the act of the deputation. It purported to be nothing else. He might have properly signed the record if in fact he had voted against the grant, and had been opposed to the action of the assembly. He might have signed the record as an authentication, and yet have been absent at the time of the action of the assembly. In any event, it was his signature as an ex officio member or presiding officer of the deputation, attesting or perhaps assenting to its action, and it was not his action as governor making a grant in that capacity. The signature by the secretary alone, to the instrument (above set forth, dated November 12, 1831) which recites the previous action of the deputation, and charges the alcalde of the jurisdiction to execute the document which will secure the grantee in the grant, is simply a direction to the alcalde, and has no materiality upon this branch of the case other than as confirming the view that the grant was solely that of the deputation.
We cannot hold that when the power was given under the laws of Mexico to the governor to make grants of lands, he in any manner exercised that power or performed an act equivalent to its exercise, by presiding ex officio at a meeting of the territorial deputation which made a grant of lands in conformity to a petition solely addressed to it, and by authenticating as president the action of the deputation in deciding that the grant should be made.
The two positions, president of the deputation and governor, are separate and distinct, and the action of a governor merely as president of the deputation, and of the nature above described, is not in any sense and does not purport to be his separate and independent action as governor, making a grant of lands pursuant to a petition addressed to him officially. As governor he might refuse the grant upon a petition addressed to himself, when as president of the deputation he might sign the record authenticating its action in regard to a petition *561 addressed solely to that body. And it is obvious from the wording of the record that the president of the deputation was not assuming to act as governor upon a petition addressed to himself, but only as the president of the deputation. It might have been that he acquiesced in the assumption by the deputation of the right to make the grant, but his act of signing the record cannot be tortured into a grant or as the equivalent of a grant by himself.
It is further urged that there has been what amounts to a grant by the governor by reason of his letter of December 22, 1831, signed by him and above set forth, thus, as is claimed, ratifying the grant of the deputation and making it his own.
The only evidence that the person who signed the letter was the governor at that time is the heading of the letter, "Office of the Political Chief of New Mexico." It will be also noted that the person signing it is not the same one who signed the record of November 12, 1831, as president of the deputation. But assuming that Chavez was governor in December, 1831, when he signed the letter, he therein simply acknowledged the receipt of the official communication of the alcalde, in which that officer reports that he had executed the decree "of the most excellent deputation, granting to the citizen Nerio Antonio Montoya a tract of land." In reply to the question as to how much the alcalde's fee should be, he answered, that he was ignorant of the premises, and advised the alcalde to put the question to the assessor, the officer to whom it belonged to advise the justices in the first instances in such cases.
Now what does the governor ratify by this letter? Nothing.
The contention in favor of the grant, based upon the letter, is, that assuming the governor had power to make the grant, it was his duty when he learned from the report of the alcalde that one had been made by the deputation, and that possession had been delivered under it, to protest against and to deny the power of the deputation to make such grant, and unless he did so, his silence was evidence of the fact that he not only approved the act of the deputation in making the grant, but that he approved it as his own, and that such *562 approval was the same as if the governor had himself made the grant, and in substance and effect it was his grant.
This contention we think is not founded upon any legal principle, and is in itself unreasonable. The writer of the letter is not the same person who signed the record of the proceedings of the deputation. The report of the alcalde gave him the information which, it is true, he may have had before, that the deputation had assumed the power to grant the land. His protest as to the legality of such action would not have altered the fact that it had occurred, while on the other hand his silence might simply be construed as evidence of his unreadiness at that time to dispute, or possibly of his belief in the validity of the action of the deputation. Or his silence might have been simply the result of his approval of the act of the alcalde in obeying the commands of the deputation, while he thought it was not the proper occasion upon which to contest or deny the validity of the grant which the deputation had actually made. Many reasons for his silence might be suggested, but the claim that it equalled in law a positive grant by the governor is, as we think, untenable.
While such silence is entirely consistent with other views that might have been held by the governor, it certainly cannot properly be ascribed, as a legal inference from the facts stated, to his desire to make the grant himself, nor could it be said that his desire (if he had it) was the legal equivalent of an actual grant.
His knowledge that another body had assumed to make a grant is not equivalent to the making of the grant himself, and he was the person who alone had power to make it. There is nothing in the letter which aids the plaintiff herein.
Finally, it distinctly appears that the possession of the parties is insufficient in length of time to prove a valid title. In United States v. Chaves, 159 U.S. 452, the possession was under the claim of a grant made by the governor of New Mexico to the alleged grantees. The grant had been lost, but it had been seen and read by witnesses, and its existence had been proved by evidence sufficient, as was stated in the opinion, *563 (page 460,) to warrant "the finding of the court below that the complainant's title was derived from the Republic of Mexico, and was complete and perfect at the date when the United States acquired sovereignty in the territory of New Mexico, within which the land was situated." We do not question the correctness of the remarks made by Mr. Justice Shiras in regard to evidence of possession and the presumptions which may under certain circumstances be drawn as to the existence of a grant.
We do not deny the right or the duty of a court to presume its existence in a proper case, in order to quiet a title and to give to long continued possession the quality of a rightful possession under a legal title. We recognized and enforced such rule in the case of United States v. Chaves, decided at this term, in which the question is involved. We simply say in this case that the possession was not of a duration long enough to justify any such inference.
There is no proof of any valid grant, but on the contrary the evidence offered by the plaintiff himself and upon which he bases the title that he asks the court to confirm, shows the existence of a grant from a body which had no legal power to make it, and which, therefore, conveyed no title whatever to its grantee, and the evidence is, as given by the plaintiff himself, that it was under this grant alone that possession of the lands was taken. We cannot presume (within the time involved in this case) that any other and valid grant was ever made. The possession of the plaintiff and of his grantors up to the time of the treaty of Guadalupe Hidalgo, in 1848, had not been long enough to presume a grant. Crespin v. United States, 168 U.S. 208; Hayes v. United States, 170 U.S. 637, 649, 653; Hays v. The United States, ante, 248. The possession subsequently existing, we cannot notice. Same authorities.
We think the judgment of the court below should be
Affirmed.